UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-308(2) (ADM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL TREVINO, )<br>a/k/a "Mike Mike", )<br>)<br>Defendant. ) | GOVERNMENT'S OPPOSITION TO<br>DEFENDANT'S MOTION TO MODIFY<br>CONDITIONS OF BOND |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Benjamin Bejar, Assistant United States Attorney, hereby submits its opposition to the defendant's motion to modify conditions of bond (ECF 133). The defendant's sole reason seeking to modify his condition restricting him to halfway house detention is "the delay in halfway house placement and the likelihood of further extended delay." Because the defendant has failed to meet his burden of showing that *new* information exists that has a material bearing on the determination of detention, the defendant's motion should be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In November 2016, a grand jury returned a four-count indictment against the defendant and four others, alleging conspiracy and felon in possession charges committed as members of the "Hit Squad" criminal street gang in St. Paul, Minnesota. (ECF 1) Specifically, the defendant is charged with conspiring with other Hit Squad gang members from at least July 2014 through November 2016 to illicitly possess firearms as felons. (ECF 1)

As provided in the Indictment, the main purpose of the Hit Squad gang was to prevent rival gang members from entering what they consider to be their "turf," which constitutes portions of the West side of St. Paul, by jointly obtaining, possessing, and using firearms and through other criminal acts, including robberies and assaults. During the timeframe of the conspiracy, Hit Squad gang members were involved in a gang war with rival gangs including the HAM Crazy gang, which led to the shooting of several gang members on both sides of the conflict. Because of the ongoing gang war and to conduct other criminal acts, Hit Squad gang members, including the defendant, conspired to illegally obtain and jointly possess firearms.

During and in furtherance of the conspiracy, in August 2014, the defendant and a co-defendant jointly possessed an H&K .45-caliber semi-automatic pistol in St. Paul, Minnesota during a drive-by shooting targeting an associate of a rival gang, the Menace Tiger Crips, as set forth in Overt Act 6 of the Indictment. As proffered by the United States during the defendant's November 2016 detention hearing, this vehicle-to-vehicle shooting took place in a residential area, and police recovered about one dozen spent casings where the shooting took place. (ECF 135 at 00:28)[1] In March 2015, the defendant and another Hit Squad gang member jointly possessed a loaded Smith and Wesson 9-millimeter semi-automatic pistol, and a loaded IMEZ .380-caliber semi-automatic pistol during a traffic stop following a shots-fired incident in St. Paul, Minnesota, as set forth in Overt Act 9. Also in March 2015, the defendant and several other Hit Squad gang members jointly possessed several firearms,

---

[1] ECF 135 is the audio recording of the defendant's November 18, 2016 evidentiary detention hearing before United States Magistrate Judge Janie S. Mayeron. The reference is to the timestamp of the recording.

including a loaded Beretta 9-millimeter semi-automatic pistol and a loaded SAR Arms 9-millimeter semi-automatic pistol during the making of a threatening gang video (filmed in the common area of a St. Paul apartment complex) targeting the HAM Crazy gang, as set forth in Overt Act 10. As proffered by the United States during the defendant's detention hearing, the defendant is seen in the video menacingly brandishing two firearms. Two firearms were recovered by police at the scene that were specifically traced to shots-fired incidents just a few days before, during one of which a HAM Crazy gang member was shot by one of the firearms brandished by the defendant in the video. (ECF 135 at 01:58)    In June 2015, the defendant and two other Hit Squad gang members attacked and beat a 14-year-old HAM Crazy gang member, leading another HAM Crazy gang member to fire approximately ten shots at the Hit Squad assailants, wounding one of them and also striking a passing vehicle containing an innocent woman and her children, as alleged in Overt Act 12. The Indictment alleges fourteen firearms in total were knowingly possessed by Hit Squad gang members as felons during the conspiracy.

On November 18, 2016, Magistrate Mayeron held an evidentiary detention hearing, and the defendant called his mother and step-father to testify. (ECF 44) The defendant argued for release to home detention at his parents' residence in Austin, Minnesota. (ECF 135 at 06:25 and 40:59) Magistrate Mayeron, however, specifically considered and rejected that as a viable condition of release, finding that the defendant committed his felony offenses while he was living with his parents under their care and concluding that home detention would not prevent the defendant from engaging in further criminal acts. (ECF 135 at 44:19 and 44:35) Instead, Magistrate Mayeron expressly ruled that restricting the defendant to 24-hour

lockdown at a suitable halfway house was one of a combination of conditions that would prevent the defendant from committing further criminal acts.  (Id. at 44:42 – 44:55, 48:19)  Magistrate Mayeron also expressly noted on the record that no halfway house was currently available, and the defendant would be detained by the United States Marshal and released only when an appropriate halfway house became available.  (Id. at 43:57-44:16, 50:55-51:03; ECF 45 at 3, 6)  The defendant did not object to the ordered conditions of release, (ECF 135 at 49:33-49:41, 50:04-50:21; ECF 45 at 5), and signed a $25,000 unsecured appearance bond, (ECF 46).

On December 21, 2016, the defendant appeared with counsel and pleaded guilty to Count 1, conspiring with other Hit Squad gang members to illicitly possess firearms as felons, pursuant to an executed plea agreement filed with the Court.  (ECF 96, 97)  Following the change-of-plea hearing, the Court remanded the defendant to the Marshal's custody until an appropriate halfway house placement became available.  (ECF 96)

## ARGUMENT

A detention hearing may be reopened before trial only if a court finds that "information exists that was not known to the movant at the time of hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person in the community."  18 U.S.C. § 3142(f).  "In other words, to reopen a detention hearing a defendant must, first, 'present [ ] information that was not known or available to him at the time of his original detention hearing,' and then, second, show that such information 'is material to and has a substantial bearing on whether he should remain detained.'"  *United States v. Petters*, No. 08-

364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009). The defendant's motion abjectly fails to meet his burden of showing any *new* information that was not known at the time of the hearing or that has a material bearing on the issue of detention. The defendant has failed to make the necessary showing to reopen the detention hearing, much less to modify the order setting conditions of release in this case.

As noted, the defendant's sole reason for seeking to modify his conditions of release is "the delay in halfway house placement" underscored by the prospect that the delay will continue. But the record plainly shows that this is *not* information that was "unknown to the defendant at the time of the hearing." Rather, the Magistrate Judge expressly stated on the record that no halfway house was currently available and that the defendant would be detained by the United States Marshal *until* an appropriate halfway house became available. (ECF 135 at 43:57-44:16, 50:55-51:03). Additionally, the Order setting release conditions also expressly noted that the defendant would be held in the custody of the United States Marshal until an appropriate halfway house placement became available. (ECF 45 at 6) The defendant did not object at the hearing to this condition, agreed on the record to abide by the ordered conditions, and reviewed and signed the order acknowledging its terms. The lack of an available halfway house was expressly known and acknowledged by the defendant at the hearing. *See Petters*, 2009 WL 205188, at *2 (rejecting defendant's contention on "new information" prong because same argument made before magistrate judge and rejected).

Nor does the delay of halfway house availability materially bear on the issue of detention. In fact, the defendant's proposed modification—that he be released to "home monitoring or GPS monitoring" was expressly considered and rejected by Magistrate

5

Mayeron as a viable condition of release.  Indeed, the defendant's proposed modification does not even include 24-hour home confinement.  The testimony at the detention hearing unequivocally established—and Magistrate Mayeron expressly found—that the defendant committed serious felony offenses, including second-degree riot (while armed with a firearm) and crime for the benefit of a gang (physical assault of a rival gang member resulting in retaliatory shots fired) while the defendant resided at his parents' residence and was under their supervision.  Moreover, his parents reasonably conceded during their testimony that they could not monitor the defendant or know of his whereabouts 24-hours per day nor a majority of the time because of their work and school schedules.  Additionally, despite the defendant's claim at the hearing that his parents would ensure his court appearances, the defendant's bond report showed the defendant failed to appear for court hearings at least 7 times (and 4 arrest warrants were issued), while residing with his parents.

Significantly as well, the defendant has pleaded guilty as charged in this case and faces the statutory maximum of 60 months' imprisonment.  (ECF 97)  Normally after a defendant pleads guilty to a criminal offense that warrants a term of imprisonment, the Court shall order the defendant detained.  *See* 18 U.S.C. § 3143(a)(1).  The defendant has made no showing that he does not warrant post-plea detention, let alone a modification of his ordered conditions of release for conditions expressly considered and rejected by the presiding Magistrate Judge.

6

## **CONCLUSION**

For all the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion and uphold without modification the order setting conditions of release.

Dated: <u>January 26, 2017</u>                    Respectfully submitted,

                                        ANDREW M. LUGER
                                        United States Attorney

                                        */s/ Benjamin Bejar*
                                        BY:  BENJAMIN BEJAR
                                        Assistant United States Attorney
                                        Attorney ID Number 351131