**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 15-235(4) (JNE/TNL)**

| United States of America, | ) | |
| :--- | :--- | :--- |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S POSITION** |
| v. | ) | **ON SENTENCING** |
| | ) | |
| | ) | |
| | ) | |
| Kendall Dvontae Pruitt, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This memorandum is submitted on behalf of Kendall Dvontae Pruitt in connection with his sentencing before the Honorable Ann D. Montgomery. On November 8, 2016, Defendant Kendall Dvontae Pruitt was charged with Count 1 Conspiracy-Felon in Possession of Firearms, 18 U.S.C. §§ 922(g)(1) and 371, and Count 4 Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. Presentence Investigation Report ¶ 1 (Mar. 14, 2017) (hereinafter PSR). On February 17, 2016, Mr. Pruitt plead guilty to Count 1 Conspiracy-Felon in Possession of Firearms, pursuant to a written plea agreement. *Id.* at ¶ 4. As part of the plea agreement, the government has agreed to dismiss Count 4 at sentencing. *Id.* at ¶ 7.

Probation calculated in the PSR that Mr. Pruitt's base offense level is 14. *Id.* at ¶ 44. The parties agree a 6-level increase is applicable because the conspiracy involves at least 25 but less than 99 firearms, and a 2-level increase will apply because the firearms

were stolen. *Id.* at ¶ 46-47. Additionally, a 4-level increase is applicable because the firearms involved in the conspiracy were possessed in connection with another felony offense. *Id.* at ¶ 48. However, Mr. Pruitt will receive a 3-level reduction for his acceptance of responsibility. *Id.* at ¶ 55-56. Therefore, the total offense level is 23, and since Mr. Pruitt has a criminal history category of I, the guideline range is calculated at 46 to 57 months. *Id.* at ¶ 67

For the reasons set forth below, Mr. Pruitt, by and through his attorney, Eric Hawkins, respectfully requests this Court impose a sentence of no more than 46 months and credit Mr. Pruitt for time served in federal custody. This sentence is appropriate in consideration of Mr. Pruitt's upbringing, his drug and alcohol addictions, and his cooperative behavior in accepting responsibility.

## **ARGUMENT**

I.    **KENDALL PRUITT'S UPBRINGING, HIS STRUGGLE WITH ADDICTION, AND HIS COOPERATIVE BEHAVIOR SUPPORT A COMMITMENT OF NO MORE THAN 46 MONTHS.**

Pursuant to *Gall v. United States* and related cases, there is no longer a presumption that a guideline sentence is reasonable, and sentences now must be rooted in "an individualized assessment based on the facts present." 552 U.S. 38, 50 (2007). A sentencing court must consider the following factors as set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed –

  a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  b. to afford adequate deterrence to criminal conduct;

  c. to protect the public from further crimes of the defendant; and

  d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3. The kinds of sentences available;

4. The advisory guideline range;

5. Any pertinent policy statements issued by the Sentencing Commission; and

6. The need to avoid unwarranted sentence disparities.

Examination of §3553(a) factors will show the requested sentence fulfills the purposes of sentencing in this case.

## A. Kendall Pruitt's history shows that he has struggled to escape from his gang-influenced environment, and that he has been chemically dependent for the majority of his life.

A criminal sentence should adequately address how the particular defendant, as an individual, came before the court on the matter for which they are to be sentenced. *Kimbrough v. United States*, 128 S.Ct. 558, 575 (2007); *Rita v. United States*, 127 S.Ct. 2456, 2464-65 (2007). This requires the Court to examine the nature and circumstances of the offense, as well as the history and characteristics of the defendant, in order to determine a sufficient and reasonable sentence.

An examination of Mr. Pruitt's history reveals he was assimilated into a St. Paul gang at a very young age, and such affiliations came hand-in-hand with serious drug and alcohol addictions. PSR at ¶ 82. Mr. Pruitt was born in St. Paul to Ellice Thomas, who

raised him and his two half-brothers as a working, single-mother. PSR at ¶ 72. Mr. Pruitt's father, also named Kendall Pruitt, left the family when he was only five years old. *Id.* at ¶ 21. His father has since been in and out of prison, so Mr. Pruitt does not have a close personal relationship with him. *Id.* There are six more half-brothers on his father's side, but since Mr. Pruitt did not live with them and two brothers are currently incarcerated for a burglary offense, he is not close to this side of his family. *Id.* at ¶ 72. After his father left, Mr. Pruitt painfully watched his mother struggle to make enough money to financially support her 3 boys. *Id.* at ¶73. There were often times when the family could not afford necessities such as food, so Mr. Pruitt found himself stealing just to get a meal. *Id.* at ¶ 73.

Mr. Pruitt grew up in an underprivileged neighborhood, amongst gang members and drug dealers in St. Paul. *Id.* at ¶ 74. He was introduced to marijuana when he was only a kid, at thirteen years old, and a few short years later became a member of the Hit Squad street gang. *Id.* Severe alcohol use came next, and by the age of sixteen he was drinking large amounts of liquor on a daily basis. *Id.* at ¶ 83. The addictions started snowballing, and to make matters worse, Mr. Pruitt started gambling hundreds of dollars away. *Id.* at ¶81. For a short period of time, Mr. Pruitt held a legitimate job at Cub Foods, but after getting pressure from his fellow gang members, he dropped the job and supported himself by selling marijuana. *Id.* at ¶ 89. Due to his addictions it became impossible for Mr. Pruitt to concentrate in school, most of the time he didn't bother going, so he eventually dropped out and has yet to obtain his GED. *Id.* at ¶ 87.

Mr. Pruitt has only just turned twenty years old on January 4th of this year, he is still young and extremely influential. All he has known his whole life was survival

through crime, whether was it stealing because he was hungry, or watching his father and brothers go to prison. He quickly got hooked on drugs and alcohol, and maintained his gang association to help feed those addictions.

Even before he could be classified as an adult, Mr. Pruitt was in the system and has previsouly been incarcerated, but this is the first time he is facing a significant prison sentence. Thus, Mr. Pruitt finds himself at a crossroad; he can either continue down the path of addiction and violence, or take the opportunity to treat his chemical dependency issues, obtain his GED, and fight for a better future. Currently, Mr. Pruitt is headed towards the latter path, and looking forward to utilizing the tools that will be available to him once sentenced.

**B. Kendall Pruitt has accepted responsibility by pleading guilty, and is committed to change.**

Mr. Pruitt has accepted full responsibility for his actions by pleading guilty. *Id.* at ¶ 54. As a result of his acceptance of responsibility, and as stated in the PSR, Mr. Pruitt should receive a two level reduction pursuant to USSG §3E1.1(a), and one additional level reduction pursuant to USSG §3E1.1(b). *See* USSG §3E1.1. Mr. Pruitt also respectfully requests that this Court view his acceptance of responsibility as further evidence of his desire to change and put his criminal past behind him.

Mr. Pruitt's only prison experience is the one year and one day sentence that he served in State custody for conduct related to this current offense. On July 22, 2015, Mr. Pruitt was convicted of Crime Committed for Benefit of Gang, a felony offense, which was prosecuted by the State of Minnesota. Mr. Pruitt was sentenced to the before-mentioned prison sentence on December 24, 2015, following a probation violation on his State case, and was released under supervision on August 10, 2016. Even though Mr.

Pruitt's incarceration for his State offense is not counted as custody credit for this current federal charge, this court should take into consideration the time Mr. Pruitt has already served for mitigation purposes, as it arose out of the same conduct and was a swift, appropriate sanction.

Mr. Pruitt's State prison sentence made a life changing impression on him, and he has since dedicated himself to not returning to the lifestyle that sent him there. This commitment is evident by Mr. Pruitt's behavior in the beginning of this case. Before his arrest for this instant offense, Mr. Pruitt was doing well on supervised release by remaining violation free and accountable. *See* Letter Ramsey County Community Corrections Department (Aug. 10, 2016). So accountable, in fact, that he turned himself in for this federal offense. While home on supervised release, watching television with his mother, Mr. Pruitt suddenly saw his face on the television stating he was wanted by law enforcement. Instead of running or waiting around for someone to pick him up, Mr. Pruitt took the initiative and turned himself him knowing it would result in him remaining in custody. This would have been especially difficult for Mr. Pruitt, as he was only nineteen years old at the time and just recently released from serving eight months prison in St. Cloud, but it shows his commitment on getting onto the right track.

In describing Mr. Pruitt's prior criminal conduct, the government's portrayal of events overstated Mr. Pruitt's involvement with the shooting. Mr. Pruitt does not deny he approached a rival gang member and fought with his fists, but neither he nor his fellow gang members brought a gun to this fist fight. It was the actions of a rival gang member not associated with Mr. Pruitt who unexpectedly pulled out the gun and shot, and these

actions should not be held against Mr. Pruitt or aggravate his sentence especially in light of his current progress.

One of the underlying problems Mr. Pruitt is currently confronting is his drug and alcohol addiction which has been overbearing since his youth. Since this offense, he has acknowledged that he needs help overcoming this obstacle, and plans to get treatment in the future. He has already been taking advantage of some of the resources available for him while incarcerated. In February, Mr. Pruitt attended the Alternatives to Violence Project, which is a positive step in distancing himself from further gang violence. *See* Alternatives to Violence Project (Feb. 24, 2017).

Therefore, the Court should recognize Mr. Pruitt is willing to make positive steps towards his rehabilitation, including taking responsibility and seeking programs to assist in his rehabilitation. Additionally, this Court should take into consideration that Mr. Pruitt has served time for what has been deemed relevant conduct as a mitigating factor for this instant offense.

## II. A SENTENCE OF NO MORE THAN 46 MONTHS OF IMPRISONMENT IS MORE THAN SUFFICIENT TO ACCOMPLISH THE PURPOSES OF SENTENCING.

Because the guidelines are now advisory, the sentencing table and the restrictions on downward departures, probationary sentences, sentences of home confinement, and split sentences in U.S.S.G.§§ 5A, 5B1, and 5C1 are also advisory. As such, it is well established that this Court is entirely free to reject the guideline sentence in favor of a sentence that more effectively advances the statutory purposes of sentencing. However, Section 3553(a) requires that a court impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

Mr. Pruitt finds himself before this Court because of the mistakes and poor decisions he has made. Though he does not wish to excuse his behavior because of his difficult past and chemical addictions, it does offer an explanation as to how he got to where he is today. Mr. Pruitt is still very young, only twenty years old, and still has ample time to start fresh after he serves his sentence. A fair and sufficient sentence will be perceived by Mr. Pruitt as a vote of confidence from this Court that he still has potential, and in turn, make Mr. Pruitt more confident in his ability to assimilate back into society. Therefore, a sentence of no more than 46 months imprisonment is more than sufficient to meet the needs and purposes of sentencing in this case when considering all of the factors with Mr. Pruitt.

## CONCLUSION

Upon balance of the factors to be considered under 18 U.S.C. § 3553 in imposing a sentence, it is requested that Mr. Pruitt receive a sentence that is sufficient, but not greater than necessary to affect the goals of sentencing. Considering Mr. Pruitt's difficult upbringing, drug addictions, his lack of treatment but desire to receive treatment, and his acceptance of responsibility, this Court should impose a sentence of not more than 46 months.

Dated: April 6, 2017                                  Respectfully submitted,


                                                      *s/Eric Hawkins*_____
                                                      Eric Hawkins
                                                      Attorney ID No. 0276947
                                                      Attorney for Defendant
                                                      3201 Hennepin Ave. S
                                                      Minneapolis, MN 55408
                                                      (612) 824-5005



**Community Corrections Department**

ADULT SERVICES DIVISION
SPRUCE TREE CENTRE - NORTH
1600 University Avenue - Suite 226
St. Paul, MN 55104

Tel: (651) 266-7626
Fax: (651) 266-7629

11-17-2016

On 8-10-16, Mr. Kendell Pruit was placed on Supervise Release in Ramsey County, MN. He had remained violation free and accountable until he was taken into custody on 11-14-16 in Sherburne County Jail.

Sincerely,

Matt Bifulk
RCCCA
Parole - Probation Agent.
651-266-7637

**Minnesota's First Home Rule County**
printed on recycled paper with a miniumum of 10% post-consumer content

# Alternatives to Violence Project

## A Program of
## Friends for a Nonviolent World

*This is to certify that*

*Kendell Pruitt*

*Volunteered to attend a 1-day Alternatives to Violence Project Workshop. This is a 5- hour course in nonviolent conflict resolution, communication and affirmation.*

2-24-2017

**Lead Facilitator**                          **Date**

## Workshops in Nonviolent Conflict Resolution

### Sponsored by

## Minnesota Alternatives to Violence Project

### A Program of

### Friends for a Non-Violent World

The Alternatives to Violence Project is an organization of dedicated volunteers, committed to helping people develop effective ways of dealing with conflicts creatively, and without violence.  Its courses are offered only to voluntary participants.  Each course consists of a 22-hour intensive program of exercises and discussions designed to develop self-esteem and self-confidence in a trusting and supportive atmosphere, which creates a sense of community.  The courses teach principles of cooperation, respect, and affirmation of the dignity of every living being.  Listening, communication, and observational skills are enhanced, empowering individuals to explore a variety of nonviolent solutions that are possible in almost every conflictive situation.

AVP-MN at FNVW, 1050 Selby Avenue, St. Paul, MN 55104

(651) 644-5851 • avp@fnvw.org